Mr. Townsend, can you hear me? I can. You may proceed. Thank you, Chief Justice, Chief Judge Sykes, and may it please the Court. Hammond's conviction and sentence were infected with a host of legal errors. First, exigent circumstances. There were not exigent circumstances here as a matter of law, for there was ample time for the officers to obtain a warrant. No later than Sunday, October 29th, Detective Gearing Helley believed he had probable cause to arrest Mr. Hammond and to secure a warrant. He knew Mr. Hammond's address. He knew Mr. Hammond's phone number. He took no action, nor did any of the other four officers investigating the case. That is entirely consistent with the conclusion that there were no exigent circumstances. Detective Gearing Helley instead waited until late afternoon on Monday to do anything, but nothing had changed from Sunday to Monday afternoon. Indeed, Detective Gearing Helley admitted at the suppression hearing that he had no specific information regarding danger or death to anyone. Yet, he still went to AT&T and said there was an exigency. Yet, he didn't provide any facts to AT&T about that exigency, just claimed that there was one. All of this conduct demonstrates that there was ample time to seek a warrant, and Detective Gearing Helley simply seemed to believe that the exigent circumstances doctrine was one of preference, not one of necessity, but that is wrong. Indeed, the government's contrary arguments here, like those in Patino, ring hollow. Even though it maintains there were fears Hammond would rob again, yet no one, particularly not any of the officers even in Indiana, tried to locate Hammond for more than a day, despite having his home address. So if the 30 minutes from Patino were sufficient to seek a warrant for a suspect who had committed to robbing again, then the day and a half here surely is. The district court credited the officer's testimony that he was concerned that Hammond was going to rob again and he had a gun. That's reviewed under a clearly erroneous standard. How can we conclude that that conclusion of the district court is clearly erroneous? I don't think that you need to conclude that that conclusion is clearly erroneous. Detective Gearing Helley had that same fear on Sunday morning when he had all of the information. And in Patino, even before the officers went to go look for Patino, they had credible evidence that one, he had already shot someone in a previous robbery, and two, that he had committed to robbing again and then fleeing Chicago. Yet still this court held there was sufficient time to obtain a warrant. So the district court's conclusion and the crediting of that testimony may be true, but that doesn't undercut the reality that there was sufficient time here. So there are two aspects here. There are, were there essentially exigent circumstances and was there sufficient time to get a warrant? The district court's factual finding that I just indicated went toward the exigent circumstances. Is it your argument that we don't need to address that or consider that because there was sufficient time to get a warrant and they didn't do that? No, so I don't, I don't think they're necessarily two different elements. The test is, are there exigent circumstances such that there is no time from a reasonable objective perspective to seek a warrant? The circumstances here and the facts on the ground clearly demonstrate none of the officers believed that there was insufficient time to obtain a warrant. Indeed, multiple officers testified that there was no impediment to them seeking a warrant on Sunday. So Mr. Townsend, putting aside our case law on exigent circumstances, if you look at the good faith exception here that the district court relied on, specifically that the officer acted in good faith, relying on a 2702, that particular statute does not have a warrant requirement or a time limit that there wasn't sufficient time to seek a warrant. How should that play into our good faith analysis? So 2702 C-4, which I'll call C-4 for ease of reference, is a red herring here because it doesn't address the predicate question of what the government needs to seek a C-4. In fact, the government admits that C-4 is a codification of the exigent circumstances test. What C-4 does is provide a shield to AT&T when, in the face of an exigent circumstances request, they provide the information. It doesn't apply as 2703 D would in Curtis. 2703 D provides a specific evidentiary standard that is lower than a warrant requirement. But why is that necessary for a good faith reliance? You're right that the way C-4, I'll use your terminology, is written, it gives the provider the out. It allows the provider to turn it over. It's not written in terms of the government's burden or what the government has to do. But why does that matter for a good faith reliance? Because to even get to good faith reliance, you still have to have the exigent circumstances test met. And all of the cases that the government does cite, though, as we explained in our brief, wisely doesn't rely upon, the courts go through exigent circumstances analysis. So, Detective Gearing-Helly still has to go to AT&T with exigent circumstances. Are you arguing that because of the language in C-4? Or because you think in order to get good faith reliance that there has to be the separate prong of exigent circumstances met? Do you understand? Where is the exigent circumstance argument you're making coming from in terms of the good faith reliance, not the exigent circumstances exception? Because as the government admits, C-4 is effectively a codification of exigent circumstances. We have a test for that. C-4 relates only to AT&T. You can contrast that with 2703D, which specifically relates to what the officers must present to get an order. So, Mr. Townsend, I want to make sure I understand you. Are you saying then, because I'm hearing two different things, are you saying that the government can't rely on C-4 because the way it is drafted, it's drafted to protect the provider? Or are you saying in order for the government to rely on C-4, they also have to have exigent circumstances? Well, I think that the answer is... Because they're two separate doctrines. The good faith doctrine is separate than the exigent circumstances. Correct. The good faith doctrine is separate. So, is your argument that they can't rely at all on C-4 for a good faith argument because it's not written in terms of a law enforcement burden? It's written in terms of the provider? Yeah, that is one way to look at it. I think they can't rely on it in good faith here to cover up when they don't have exigent circumstances. That would mean that the government... exigent circumstances are now completely irrelevant. The government can go to AT&T with no exigent circumstances to be passed by this court. They're irrelevant because they're written into C-4. The warrant requirement is not written into C-4. But C-4 essentially writes it in because it says, if the provider in good faith believes that an emergency involving danger of death or serious physical injury to any person requires it. So, that element, to the extent you're calling that exigent circumstances, is written in here. What it doesn't say is you don't have time to get a warrant, which is what's in the exigent circumstances doctrine, not in the C-4 doctrine or statute. That's true, although I would think that if there is an emergency and the specific language in C-4 is they have to have the information to protect imminent or immediate death or danger. There really is no difference there between satisfying either standard. It does say imminent. It does say involving danger of death. I believe. That an emergency involving danger of death or serious physical injury to any person requires disclosure. I'm not sure that makes a difference, but... Disclosure without delay, I think, is where I was going with immediate. But in any event, to accept that argument, Your Honor, would effectively to be that for the government to rely upon it would be for AT&T then to pass judgment on exigent circumstances and just say, well, we rely on AT&T's purported good faith belief, which of course there is no factual record here as there is in every other case that I have found that they had a good faith belief. Your argument, Mr. Townsend, if I could interject here is essentially that it's a violation of the Fourth Amendment as a matter of law. In other words, it does not constitute good faith under Leon for an officer to rely on a voluntary disclosure by a provider under 2702 C-4. Yes, I would say that. Doesn't matter with the facts. The facts are irrelevant. Certainly, we know this is and the government has conceded it is a constitutionally protected information. And so then to say that AT&T can effectively override that and the government can rely on good faith on AT&T's purported belief based on, in this case, who knows what, is inconsistent with the strictures of the Fourth Amendment. So 2702 is just irrelevant here and we pivot right to exigent circumstances. Yes, Your Honor. And as we explained in our brief, the actual elements of the burden was on the government to demonstrate AT&T had this belief and of course didn't. And so even if the court were to go down the good faith rabbit hole, which we do think it is one, the government hasn't satisfied its burden at all. So if we're on to good faith, I want to talk about a couple of the other doctrine the government attempts to use to overcome the lack of exigent circumstances here. First, independent source doctrine. The government, of course, has the burden to prove this and the lower court never ruled on it. Now, of course, this court may affirm for any basis on the record but won't do so when those bases require factual findings as these do and the lower court never have. In any event, the government can't satisfy its burden. For independent source, for example, the government must prove that the obtaining of the evidence did not result from what the government and officers had seen or seized during the unlawful search. The government here admits at page 17 of its brief that the 2703D order expressly contained information the government had through the ping request. And indeed, the government knew exactly what the fruits of the 2703D order would be when they asked for CSLI because they already had it. Similar to Markling, government cannot demonstrate that they sought the 2703D order independent of what they already knew. Now, unless there are further questions, I want to touch on this. Mr. Thompson, before you move off of that, please, the 2703D application, if I understand you, you're saying we can't rely on that order and obtaining of the historic cell site, not the real-time, but the historic cell site information because it's tainted with information that they obtained from this, your argument, Fourth Amendment violation of getting it without an order. Is that correct? That is correct. So, my read of that application only discloses that the government had obtained a smaller collection of the records and does not disclose anything about the contents of those records. So, why would that be a violation? So, in the order, the government specifically says they need this CSLI to determine if Mr. Hammond is in the location of the robberies, if he frequents those locations. But the government already knew that. They knew he was in those locations. But why does that matter if the government already knew that? Isn't that the whole point of an independent source doctrine? No, Your Honor. So, the test from this court is that the government must prove that it's seeking, and it has an independent source, untethered to what it had seen or seized during the unlawful search. It knew exactly what it was going to get, and that's why it got it. Doesn't untethered mean that they're not relying on it? They're not relying on the tainted information? Of course they knew they wanted the information to confirm his whereabouts during the relevant time period. Any good investigator would know that's what you want this information for. But isn't the tethered problem whether or not when you go to get the court order that the information you're using is tainted? Well, the government admitted that part of the information they used, they had, was tainted. And I'll bring the court back to the Markley. I'm not sure the government did go that far as to admit that. I mean, they referred to the smaller collection of records that they had obtained. But I don't think the government, Mr. Holler can answer that. I don't think they admitted that it was that they put anything tainted in the application under 2703 D. Well, so two points, Your Honor. The government, I believe, quotes at their brief that they had the information in the application. The lower court, of course, concluded that the application did conclude that information. But in any event, it's irrelevant. So from Markling, the court said that you had to consider whether the officer would have even applied for the warrant had he not searched in that case, Markling's briefcase. And there must be factual findings on that. There are no factual findings here that the government would have sought the information, the CSLI, had they not already known what it would show. Indeed, I think it could be suggested here that the government was seeking the CSLI from the 2703 D warrant because it knew it had problems with the earlier CSLI and needed that to introduce. Unless there are more questions, I'd like to reserve the remainder of my time. That's fine. Thank you. Thank you. Mr. Holler. Thank you. Good morning, Your Honors. And may it please the court. I hope today to make three points on the Fourth Amendment argument. First, that the government did not violate the Fourth Amendment. Second, that the government, in complying with 2702 C.4, demonstrated good faith. And third, to the extent that both those arguments would be rejected, that the independent source doctrine would still have allowed admission of the historical CSI and that, therefore, any error would be harmless. Beginning with the question of whether there was a Fourth Amendment violation, Judge St. Eve, we would frame, I believe, the argument the same way that you do and that Kentucky v. King did, which is that there are two elements. First, were there exigent circumstances? And second, was there no time to seek a warrant? On the second question, which I would deal with first, was there no time to seek a warrant? While there is limited evidence in the record, all of the evidence that is in the record on this point suggests that the answer to that question is yes, there was no time to seek a warrant. If you go to pages 58 and 59 of the suppression transcript, Detective Ghirangelli was asked, you know, could you have obtained a warrant in time? And he said, I would not have been able to obtain the phone records that placed Mr. Hammond at the scene of each robbery within that time frame. I would not have received the results depending on the carrier. Some carriers can take days. Some can take up to two weeks. If you go to the Caraballo decision from the Second Circuit, the findings here are consistent with that. In Caraballo, the officers testified it takes about six hours to get a warrant from a judge, and then it can take days to get the records from the phone carrier. Mr. Hollard, there seems to be a bit of confusion. Is the appropriate inquiry under exigent circumstances whether or not you could obtain a warrant for the real-time or a warrant for the defendant's arrest? Well, I think the question is the same regardless. I mean, to the extent that we could have... The factual, the facts that you just read from the testimony suggest that he couldn't have gotten the real-time records fast enough to find him. The district court's ruling seems to suggest it wouldn't have mattered if they had had an arrest warrant for the defendant because the arrest warrant would not have located the defendant, whereas the real-time would. So there does seem to be a distinction, and which one is the appropriate inquiry under exigent circumstances? Oh, I agree, Your Honor, that the appropriate inquiry is whether we could have gotten a real-time CLSI warrant or could have obtained the real-time information. I mean, to the extent that we could have obtained an arrest warrant, I agree with the district court. I don't know what that would have gotten us. We didn't know where the defendant was. So if we could have obtained a real-time CSLI warrant within the timeframe, then yes, that would defeat our argument. The only evidence on the point, though, the only evidence as to whether we could have obtained a real-time CSLI warrant suggests that we could not have, that it would have taken days. It would have taken far more time than the amount of time we had. Now, it's also not entirely clear in the record exactly when Detective Ghirangelli learned exactly who Mr. Hammond was and what the relevant phone number was. However, I would disagree with my opponent's characterization that it was Sunday morning. It appears that the earliest it could have been was Sunday evening. Because on page 35 of the suppression transcript, that's when Agent Badowski says he learned, got all the pieces connected together as to who Hammond was and Hammond's car and all the other information. I don't think the phone number alone could have given us exigent circumstances. Only by connecting the phone number to Mr. Hammond and his image that was on the videos, as well as the matching car, as well as the fact that he had similar prior armed robberies. I think only when all that information was combined was there possibly probable cause. And, of course, exigent, you know, the mere fact that there's an emergency isn't enough. We have to have probable cause. So, I think that we have established that there was no time to seek a warrant. And then circling back to the first point, I do think that under the precedence of this court and other courts that there were exigent circumstances. There was a serial robber who was going out, if not every night, every two or three nights with his finger on the trigger of a loaded gun, threatening to kill people if they didn't turn over money to him. And under, you know, Caraballo and Gilliam and Sudez Osorio and many other cases that we've cited in our briefs, that is enough to seek an exigent circumstances warrant. Mr. Holler, let me ask you the same question, please, that I did, Mr. Townsend, about the impact of C-4 and reliance on that statute for a good faith exception. What's the government's position on whether or not the government can rely on C-4 for a good faith exception without pulling in an exigent circumstances analysis? I think, Your Honor, that the same as in Curtis, if the government relied in good faith on the statute at a time pre-Carpenter, when it was not even clear that any of this information had any Fourth Amendment protections, and the government complied with the statute, then good faith would be triggered. Does it matter, though, in Curtis, the government relied on the provision of the statute, which allowed the government to go and get a court order? So the statute is written in terms of what the government has to do to obtain this information. C-4 does not say the government has to go to do X, Y, and Z in order for the provider to turn this over. C-4 is written in terms of what the provider can do. So does that matter to a good faith analysis? I don't think that it—again, I don't think that it does, Your Honor. To the extent that the government in good faith believed at the time that there may not have even been Fourth Amendment protections altogether, and complied in good faith with statutory provisions that said AT&T can turn over this information that we're not even sure has at the time, in 2017, has protections, then I think as long as they complied with the statute, I think that they are covered. That said, I don't, again, know that the court needs to reach it because to the extent that the government didn't violate the Fourth Amendment because exigent circumstances existed and there was no time to seek a warrant, it doesn't make any difference if the government complied with or violated C-4 because the only penalties for violations of C-4 fall upon AT&T and do not justify suppression in federal court, and that's explicit in the statute. Well, let me ask it this way, Mr. Haller. I would say under Curtis that the answer to that is no. I believe that at the time, pre-Carpenter, we could rely on the statute because it was not clear, like I said, that Mr. Carpenter—or, excuse me, Mr. Hammond's phone records or Mr. Carpenter's phone records had any Fourth Amendment protections whatsoever. So back in 2017, yes, I think we could have relied on C-4 in good faith to say all we have to do is comply with that statute and we can obtain these materials. So C-4 is not a codification of the exigent circumstances doctrine? Well, I don't think it's per se a codification of all aspects of the Fourth Amendment. C-4 does not say the government must comply with the Fourth Amendment for C-4 to apply. I do think it's Congress's interpretation of reasonably what it thought the exigent circumstances doctrine was back in the 1980s when it passed the Store Communications Act. That's what I think Congress was trying to do was enact some kind of a codification, but I think it's what the statute says, not what the Constitution means. They may be on parallel tracks and trying to achieve the same aim, but I don't think that one has to fully comply with the Fourth Amendment to satisfy C-4. Now, of course, we have to comply with the Fourth Amendment or the evidence isn't going to come in. Does the lack of time to obtain a warrant that's required under exigent circumstances apply under C-4? I don't think it does. I mean, I guess I do understand my opponent's point that AT&T has to believe that it needs to disclose the information without delay. But it is, as we've all been discussing here today, the statute is focused on what AT&T thinks and what AT&T believes. Does AT&T believe, based on the information that it's been provided, that there is an emergency involving danger of death or physical injury, and does it believe that disclosure is necessary without delay? So those are the rules that AT&T has to follow in order for it to freely disclose without being sued. So I think that that is the best answer I can give to that. Does it matter that we don't know exactly what AT&T thought? I don't think it does. I don't think it does. I think that the way that we know that AT&T believed that the statute was complied with is because they disclosed the information. If Congress had wanted to require specific written findings from AT&T or that specific written documents be presented, just like it requires that warrants either be in writing or that telephonic recordings be made, audio recordings be made, it could have imposed those requirements like it imposes on warrants under the Federal Rules of Criminal Procedure, and it didn't do that. Mr. Holler, if I could ask a post-Carpenter question. In the post-Carpenter world, how does 2702C4 apply? Could an officer reasonably rely on a provider's voluntary disclosure of CSLI post-Carpenter and get around the warrant requirement that way? I don't think so, because I think now that we know that CSLI is covered by the Fourth Amendment, it's going to have to be covered by the Exigent Circumstances. So if we comply with the Exigent Circumstances doctrine, if we can show that there is some sort of emergency, I guess where it might kick in would be suppose there was a situation where there was some kind of emergency, but it wasn't an emergency that was likely to result in serious physical injury, some kind of injury to property. A building that nobody's in is going to be blown up. And we went and we gave that information to AT&T. We would have complied with the Fourth Amendment. And if my opponent wanted to come back and say, well, you know, there wasn't a danger to a person here, they might have a claim against AT&T, but we complied in good faith with the statute. And so it seems like we would still be OK, even despite the statutory violation. But then just to further refine the hypothetical, let's say the Exigent Circumstances doctrine does not apply based on the facts of the case, but the statute does and the officer relied in good faith on the provider's voluntary compliance in a post-carpenter world, even knowing that a warrant is required, but it's because the statute is satisfied. Would that officer be relying in good faith on the statute and suppression denied? I don't know. That's a tough question. I think at that point, things would probably collapse back into a more generalized good faith question about whether the officer had a reasonable belief in Exigent Circumstances. If the officer reasonably believed Exigent Circumstances existed based on all facts known to him or her at the time, it seems like the exclusionary rule wouldn't even get in. On the other hand, if the officer knew, if the officer really knew there was no emergency here, but disclosed facts that didn't amount to an emergency and AT&T disclosed it anyway, I don't know. I highly doubt that C-4 would provide some kind of protection to the officer under those circumstances. It seems like an unlikely scenario, but I would. You know, depending on how 2702 is interpreted, it could operate as an end run around the warrant requirement in a post-carpenter world. Yeah, I don't think that that I mean, my experience has not been that phone companies and Internet service providers are just dying to provide information to us. I mean, that's just not they haven't exactly been super friendly with the government. And the government hasn't been super friendly with them lately. So I understand the concern. But I don't think that it would be too likely that that would occur. I think it is the triggering effect of carpenter that allows us just as in the C-4 context. We can't go and show up under C under or excuse me, 2703 context. We can't go under 2703 now and get orders because we know that those are that that no longer works. So are you saying that because now, you know, a warrant is required, you couldn't in good faith rely on something that didn't require a warrant unless you have one of the other Fourth Amendment exceptions? I would think so. I would think since we know a warrant is required, we couldn't rely on C-4 unless we knew that the Fourth Amendment was complied with because exigent circumstances existed. I will say in response to the last point that we were talking about, even if the court thought that there was a Fourth Amendment violation here and that we were not saved by 2702 C-4, we did comply with 2703 D. We did provide all of that information. We have to show that we would have sought the information, which we surely would have. If we hadn't done this in the first place, we would have been seeking the historical information to try to determine who the robber was. And additionally, we would always want that evidence. The unconstitutional information here also, I know these officers were all working together, but they were all independent. This information was obtained by a police officer in Michigan. The federal government went back and obtained the records he obtained, plus two days worth of earlier records. And to suggest that all the phone records forevermore are tainted, nobody can ever go back to AT&T and seek that information, I don't think makes any sense. Is it the government's position that your application under 2703 D had tainted information in it? No, Your Honor. The only information that even remotely relates to this is one paragraph, paragraph 18. All it says is that Mr. Hammond was arrested, which he constitutionally could have been, regardless of where or how we arrested him, and that the government had previously obtained phone records. I mean, I suppose that that one specific fact, to the extent that we obtained those phone records unconstitutionally, would technically be considered tainted. But we didn't tell the judge that we obtained the records unconstitutionally. We don't think we did. So I don't think that that fact, I don't think the warrant is tainted. And I think to the extent that that specific information was in there, you could just excise it and say there's overwhelming probable cause anyway. I have only a brief amount of time left. I would just ask the court to affirm on the Maez issue and on the 924C issue. And on the Hobbs Act guidelines issue, we do not believe that there is plain error here because this issue was not discussed below. We think, as even the Tenth Circuit recognized, there's a reasonable argument that every instance of Hobbs Act robbery is either robbery or extortion under the guidelines. And to the extent the court disagrees with that, Your Honor, Judge Miller was very clear in this case. And, you know, I've never heard Judge Miller. I know the court says that judges can say at any time, I would have given this sentence regardless. I mean, Judge Miller likes the guidelines a lot and usually follows the guidelines. And for him to say, I don't really think the guidelines have a ton of application here. And I think the ultimate question in this case is really, am I going to give this guy a life sentence or not? Because he's demonstrated repeatedly that when he's out, he's going to commit robberies. And that's what I'm going to do. I think the court should take that to heart, as it has in many prior cases and say it's overwhelmingly clear here that this particular guideline error did not make a difference, especially when we consider what that guideline error is. Right. We're going to go back and tell the judge. Judge, we know that all of this defendant's prior Indiana robbery offenses for robbing gas stations in Indiana are crimes of violence. However, the defendant's not a career offender because his most recent act of robbing Indiana gas stations, violation of Hobbs Act robbery, is not a crime of violence and therefore his guideline range should be lower. That's just not the kind of information that most district judges are going to listen to and say, oh, okay, well, then I definitely need to give this defendant a lower sentence. I mean, I just think as a, you know, the guidelines are what they are and they say what they say and sometimes they say things that are reasonable and sometimes they don't. But in this instance, the district court judge was very clear about why he was sentencing the defendant. And he was sentencing the defendant based specifically on wanting to give graduated sentences for each escalating robbery and wanting to essentially impose a life sentence. Mr. Holler, I understand your plain error argument. Putting that aside, has any circuit found that Hobbs Act robbery qualifies as a crime of violence under the guidelines? They have not, Your Honor. The four cases that we have cited from the 3rd, 6th, 10th, and 11th deliberates are the only ones. But as we did note in the brief, all of those cases were on plenary review, not plain error review like in Tyler. So I do think that either because the error is harmless or because the error here is not plain, the court should save that issue for another day. I do believe the Sentencing Commission is looking at the issue and if they ever have a quorum, we might get a correction or clarification, I should say, since the government's position is that even under the admittedly vague guideline, it does still qualify as extortion. I apologize for going over my time, and I would ask that the court adjourn. Thank you. Thank you, Mr. Townsend. Thank you, Your Honor. I want to focus on good faith because the government doesn't meaningfully attempt to distinguish this court's extra circumstances case law. Here, we have no evidence whatsoever that the SCA was even complied with by Detective Gearing-Helly. All we know purportedly is that Gearing-Helly called AT&T and said there's extra circumstances. That's it. We have no evidence from AT&T that they knew of the standard, believed that they had a right not to provide it. In every other case that we have found, there are documentary evidence of this exchange so that a court can actually adjudicate whether or not it was complied with. Now, the government hasn't cited a single case to this court in which such a dearth of evidence as in this case has been found to satisfy the SCA. There can be no good faith reliance on C-4, though we, of course, still believe that C-4 isn't really applicable here. But there can be no good faith reliance because there's no evidence for the government to make its burden here. And the government doesn't have a response to that other than, well, because AT&T provided the information, it must be so. But that doesn't prove anything. I want to have a couple more points. One, on the 2703D argument, my colleague on the other side says, well, we surely would have gotten this information. But there's no factual basis for that. The government didn't lay a factual record and there's no factual findings that they surely would have done anything. And I think my colleague said, well, we had no idea who Mr. Hammond was. Well, that's not correct. They knew exactly on Sunday who Mr. Hammond was. They had his name. They had all of his information. They didn't need a CSLI to find out who he was. They had his home address. They could have gone to try to find him on Sunday if there was such a danger. With respect to sentencing, Your Honor, the error was plain. As Judge St-Yves explained, every circuit who have considered this issue has concluded that Hobbs Act robbery under the categorical approach is not a crime of violence. With respect to Mr. Haller's argument regarding whether or not this was a closed case or plain and obvious, this court doesn't engage in that type of analysis typically when there's a guidelines miscalculation. In Jenkins, in fact, the government argued strenuously that the guidelines were correctly calculated. And then it said, and then it made the argument, well, the PSR appeared correct. And this court said, well, that doesn't matter. There's a guidelines miscalculation. Our precedent says plain error. With respect to whether or not the exception to the plain error doctrine from McGuire-Molina-Martinez that the government invokes is met here. Sure, the lower court did say he would have sentenced Mr. Hammond to the same sentence regardless of how he calculated the guidelines. But that doesn't hold here for a couple of reasons. First, the lower court here had no idea that the correct guidelines range would have not classified Mr. Hammond as a career offender. And so when he's making those statements, he's doing so without the knowledge that he is wildly departing from the top end of a guideline range. Mr. Hammond's guideline range was up to life. He had no ceiling. And second, the lower court's analysis of the 3553A factors provides no basis for the substantial explanation of why a departure over the guidelines was necessary. Thank you, Your Honor. So we ask you to reverse. Thank you very much. Thanks to both counsel. The case is taken under advice.